IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

ANTHONY C. ALLEN,
          PLAINTIFF,

vs.

J.A. ECKARD, SUPERINTENDENT AT STATE CORRECTIONAL INSTITUTIONS AT HUNTINGDON; A. EBERLING, LIEUTENANT AT STATE CORRECTIONAL INSTITUTIONS AT HUNTINGDON; K.M. SPARR, CORRECTIONAL OFFICER 1 AT STATE CORRECTIONAL INSTITUTIONS AT HUNTINGDON; R.W. GOUGHNOUR, CORRECTIONAL OFFICER 1 AT STATE CORRECTIONAL INSTITUTIONS AT HUNTINGDON; A. HIMES, HEARING EXAMINER AT STATE CORRECTIONAL INSTITUTIONS AT HUNTINGDON; C. McCONNELL, PHYSICIAN'S ASSISTANT AT STATE CORRECTIONAL INSTITUTIONS AT HUNTINGDON; JANE DOE, NURSE AT STATE CORRECTIONAL INSTITUTIONS AT HUNTINGDON, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES,
          DEFENDANTS.

CIVIL ACTION No. _____
COMPLAINT
JURY TRIAL DEMANDED

FILED
SCRANTON

JUN - 8 2017

PER _____
       DEPUTY CLERK

## I. JURISDICTION & VENUE

1. THIS IS A CIVIL ACTION AUTHORIZED BY 42 U.S.C. SECTION 1983 TO REDRESS THE DEPRIVATION, UNDER COLOR OF STATE LAW, OF RIGHTS SECURED BY THE CONSTITUTION OF THE UNITED STATES. THE COURT HAS JURISDICTION UNDER 28 U.S.C. SECTION 1331 AND 1343 (a)(3). PLAINTIFF ALLEN SEEKS DECLARATORY RELIEF PURSUANT TO 28 U.S.C. SECTION 2201 AND 2202. PLAINTIFF ALLEN'S CLAIMS FOR INJUNCTIVE RELIEF ARE AUTHORIZED BY 28 U.S.C. SECTION 2283 & 2284 AND RULE 65 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

2. THE MIDDLE DISTRICT OF PENNSYLVANIA IS AN APPROPRIATE VENUE UNDER 28 U.S.C. SECTION 1391 (b)(2) BECAUSE IT IS WHERE THE EVENTS GIVING RISE TO THIS CLAIM OCCURRED.

## II. PLAINTIFF

3. PLAINTIFF ANTHONY C. ALLEN, IS AND WAS AT ALL TIMES MENTIONED HEREIN A PRISONER OF THE STATE OF PENNSYLVANIA IN THE CUSTODY OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS. HE IS CURRENTLY CONFINED AT THE STATE CORRECTIONAL INSTITUTIONS AT FOREST. HIS CLAIMS IN THIS CASE, HOWEVER, ARISE FROM HIS CONFINEMENT AT THE STATE CORRECTIONAL INSTITUTION AT HUNTINGDON.

## III. DEFENDANTS

4. DEFENDANT J.A. ECKARD IS THE SUPERINTENDENT AT THE STATE CORRECTIONAL INSTITUTIONS AT HUNTINGDON. HE IS LEGALLY RESPONSIBLE FOR THE OPERATION AT THE STATE CORRECTIONAL INSTITUTION AT HUNTINGDON AND FOR THE WELFARE OF THE INMATES OF THAT PRISON.

5. DEFENDANT A. EBERLING IS A CORRECTIONS LIEUTENANT OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS WHO, AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF COMMISSIONED OFFICER AND WAS ASSIGNED TO THE STATE CORRECTIONAL INSTITUTION AT HUNTINGDON.

6. DEFENDANT K.M. SPARR IS A CORRECTIONAL OFFICER OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS WHO, AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF PRISON GUARD AND WAS ASSIGNED TO THE STATE CORRECTIONAL INSTITUTION AT HUNTINGDON.

7. DEFENDANT R.W. GOUGHNOUR IS A CORRECTIONAL OFFICER OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS WHO, AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF PRISON GUARD AND WAS ASSIGNED TO THE STATE CORRECTIONAL INSTITUTION AT HUNTINGDON.

8. DEFENDANT A. HIMES IS A CORRECTIONS HEARING EXAMINER OF THE THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS WHO, AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF HEARING OFFICER AND WAS ASSIGNED TO THE STATE CORRECTIONAL INSTITUTION AT HUNTINGDON.

9. DEFENDANT C. McCONNELL IS A PHYSICIAN'S ASSISTANT OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS WHO, AT ALL TIMES MENTIONED IN THIS COMPLAINT, WAS ASSIGNED TO THE STATE CORRECTIONAL INSTITUTION AT HUNTINGDON.

10. DEFENDANT JANE DOE IS A NURSE OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS WHO, AT ALL TIMES MENTIONED IN THIS COMPLAINT, WAS ASSIGNED TO THE STATE CORRECTIONAL INSTITUTION AT HUNTINGDON.

11. AT ALL TIMES RELEVANT TO THE EVENTS DESCRIBED HEREIN, ALL THE DEFENDANTS HAVE ACTED UNDER COLOR OF STATE LAW. DEFENDANTS ECKARD, EBERLING, SPARR, GOUGHNOUR, HIMES, AND JANE DOE CONTINUE TO ACT UNDER COLOR OF STATE LAW. EACH DEFENDANT IS BEING SUED INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY.

## IV. FACTS

12. AT ALL TIME RELEVANT TO THIS CASE, PLAINTIFF ANTHONY C. ALLEN WAS HOUSED AT THE STATE CORRECTIONAL INSTITUTION AT HUNTINGDON IN THE RESTRICTED HOUSING UNIT, ALSO KNOWN AS G HOUSING UNIT WITHIN THE PRISON.

13. ON JUNE 30, 2015, PLAINTIFF ALLEN WAS MALICIOUSLY ASSAULTED WITHOUT PROVOCATION BY DEFENDANTS SPARR AND GOUGHNOUR.

14. THE ASSAULT OCCURRED WHILE RETURNING FROM THE MINI LAW LIBRARY ON G HOUSING UNIT, WHILE WAITING TO GO THROUGH THE VESTIBULE DOOR THAT CONNECTS A AND D QUAD, DEFENDANT GOUGHNOUR, WHO HAS ALWAYS ACTED AS THOUGH HE HAS A SERIOUS GRUDGE AGAINST THE PLAINTIFF, REACHED DOWN AND YANKED THE LEGS OF PLAINTIFF'S JUMPSUIT OUT OF PLAINTIFF'S SOCKS.

15. AS WE PROCEEDED THROUGH THE DOOR, PLAINTIFF ASKED DEFENDANT GOUGHNOUR WHY HE FELT THE NEED TO TOUCH HIM? DEFENDANT GOUGHNOUR REPLIED, "SHUT THE FUCK UP." DEFENDANT GOUGHNOUR'S BODY LANGUAGE SCREAMED PASSIVE-AGGRESSION EVEN THOUGH HE LOOKED COMPLETELY HARMLESS ESCORTING THE PLAINTIFF BACK TO HIS ASSIGNED CELL. ONCE INSIDE THE CELL DEFENDANT SPARR PULLED HIM BACK OUT BY THE TETHER, WHICH WERE ATTACHED TO THE HANDCUFFS ON HIS WRIST, AND DEFENDANTS GOUGHNOUR AND

Sparr picked me up and slammed me face first down onto the concrete floor and then Defendant Goughnour jumped on my back. The assault lasted for approximately 5 minutes. During the last two minutes of the assault, Defendant Eberling was present on the quad and watching Goughnour on my back. Although Eberling was in G-Unit control booth and arrived at the scene, he did not take any measures to stop their assault.

16. Defendant Eberling was the commissioned officer assigned to G Housing Unit. Upon information and belief, DC-06.05.01 policy dictated that a commissioned officer be present whenever an inmate is moved in a Level 5 housing unit. Had Eberling been present on the floor, the assault would not have occurred.

17. Defendant Eberling looked at Plaintiff and then gave one of the officer an order to get the handheld camera. Plaintiff Allen lay on the concrete floor for another three minutes. During this time he did not receive any medical attention, even though he was clearly severely injured.

18. After the officer returned with the camera, Defendant Eberling had Allen taken to the strip cage area. After ten minutes, Defendant Nurse Jane Doe came into the strip cage area. Nurse Jane Doe took pictures of Plaintiff's injuries but did not provide any medical care to Plaintiff in the strip cage area.

19. Plaintiff was clearly injured. The left side of his face was bruised and swollen. Dizzy, Plaintiff reported severe pain in his head and throughout his body. It was clear that Plaintiff urgently needed emergency medical treatment and that his condition would worsen if immediate medical treatment were not provide.

20. Nevertheless, Defendant Nurse Jane Doe did not arrange for the Plaintiff to be transported to the nearest hospital emergency room, at J.C. Blair Hospital. Instead, they kept Plaintiff Allen at the prison as a way to downplay his injuries. She didn't even give me two tablets of Tylenol. This treatment was clearly a grossly inadequate response to Plaintiff's medical condition.

21. Upon information and belief, Defendant Nurse Jane Doe did not arrange Plaintiff's emergency medical transport because of a

POLICY OF THE MEDICAL DEPARTMENT, WHICH REQUIRES ALL EMPLOYEES TO OBTAIN AUTHORIZATION FROM A DOCTOR BEFORE CALLING FOR EMERGENCY MEDICAL TRANSPORT.

22. ON JULY 1, 2015, PLAINTIFF ALLEN WAS SEEN ON SICK CALL BY DEFENDANT McCONNELL WHO INCREASED NAPROXEN, AND TOLD ME TO PLACE A COLD CLOTH ON MY HEAD. UPON INFORMATION AND BELIEF, NAPROXEN IS PROSCRIBED FOR SORE JOINTS NOT HEADACHES WHICH PLAINTIFF WAS COMPLAINING OF.

23. AS A RESULT OF DEFENDANTS NURSE JANE DOE AND PHYSICIAN'S ASSISTANT McCONNELL'S DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS, PLAINTIFF SUFFERED PROLONGED AND EXTREME PAIN AND UNNECESSARY COMPLICATIONS IN THE TREATMENT OF HIS INJURIES.

24. AS A RESULT OF THESE INCIDENTS, PLAINTIFF WAS DIAGNOSED WITH AN UPPER RESPIRATORY INFECTION AND HAD SUCH AN INTENSE PAIN IN HIS CHEST, FOR WHICH HE REQUIRED A STERIOD SHOT. PLAINTIFF HAD TO SHIFT HIS WEIGHT TO HIS LEFT SIDE BECAUSE HE COULD NOT SLEEP ON HIS RIGHT SIDE. PLAINTIFF BELIEVES THAT THE DEFENDANTS SLAMMED HIM SO HARD... IT IS A WONDER THAT THEY DID NOT BREAK HIS NECK. PLAINTIFF CONTINUES TO SUFFER FREQUENT HEADACHES, NIGHTMARES ABOUT THE ASSAULT AND OTHER PSYCHOLOGICAL TRAUMA. LATER THAT NIGHT, PLAINTIFF'S NOSE STARTED BLEEDING.

25. ON OR ABOUT JULY 7, 2015, PLAINTIFF WAS TAKEN TO A MISCONDUCT HEARING AND FOUND GUILTY BY DEFENDANT A. HIMES OF, AMONG OTHER THINGS, ASSAULT. ALLEGEDLY RELYING ON VIDEO FOOTAGE, DEFENDANT HIMES CLAIM, THE VIDEO SHOWED ALLEN WAS "COMBATIVE" WHEN THE OFFICERS [DEFENDANTS SPARR AND GOUGHNOUR] PULLED HIM FROM THE CELL THUS JUSTIFYING DEFENDANTS USE OF FORCE.

26. DEFENDANT HIMES DID NOT EXPLAIN WHY PLAINTIFF ALLEN'S WITNESSES WERE NOT ALLOWED, OR WHY THE SWORN AFFIDAVIT WAS NOT CONSIDERED, OR, MORE IMPORTANT, WHY PLAINTIFF ALLEN COULD NOT VIEW THE ALLEGE VIDEO EVIDENCE. PLAINTIFF HAS COME TO REALIZE THAT THE HEARING EXAMINER HAS NO IDEA WHAT "IMPARTIAL" MEANS. PLAINTIFF WAS AUTOMATICALLY GUILTY BEFORE HE COULD TELL HIS SIDE. THE WRITTEN AND/OR VERBAL WORDS OF ANY CORRECTIONAL OFFICER AT THE STATE CORRECTIONAL INSTITUTIONS AT HUNTINGDON IS "THE GOSPEL."

27. ON JULY 15, 2015, PLAINTIFF ALLEN WAS AGAIN SEEN BY DEFENDANT McCONNELL, THIS TIME FOR CHRONIC CARE, AND WAS INFORMED THAT HE WOULD BE GIVEN THE FIRST OF TWO STERIOD SHOTS. THAT AFTERNOON, NURSE A. HOFFMASTER, WHO IS NOT A DEFENDANT IN THIS CASE, DID IN FACT GIVE PLAINTIFF ALLEN A STERIOD SHOT. PLAINTIFF, HOWEVER, NEVER RECEIVE THE SECOND STERIOD SHOT AS HE WAS TOLD.

28. Through the entire event, Plaintiff Allen was handcuffed behind his back and at no time threatened or was combative towards Defendants Sparr and Goughnour in any way, even though Defendants Sparr and Goughnour started the chain of events. Allen would not have been physically attacked except for the inactions of Defendant Eckard.

29. From September 20, 2008 through August 8, 2012 when I was transferred out of SCI Huntingdon and January 2, 2014 through July 7, 2015, inmates in the Restricted Housing Unit (RHU) at SCI Huntingdon have been exposed to a substantial risk of serious staff-on-inmate violence. This substantial risk of serious harm has several causes.

30. Defendants Eckard and Eberling's failure to train RHU guards in the proper use of force — especially when dealing with RHU inmates who are already restrained and thus pose no significant threat, Defendants' failure to supervise, RHU guards failure or refusal to use the least amount of force as directed by both the Department of Corrections Code of Ethics and DC-ADM 201 "Use of Force" policy, RHU guards prejudice disposition towards inmates, and guards involved were not disciplined or punished.

31. By the spring of 2015, Defendants Eckard and Eberling had actual knowledge of the substantial risk of serious harm to inmates at SCI Huntingdon. This risk was longstanding, pervasive, and apparent to any knowledgeable observer.

32. As a result of the substantial risk of serious harm at SCI Huntingdon, numerous inmates had suffered serious assaults in the RHU. The attacks were observed and/or reported to Defendants Eckard and Eberling. Upon information and belief, Eckard and Eberling knew that at least three assaults in May and June 2015 involved RHU prison officials.

33. Upon information and belief, dozens of inmates filed administrative grievances and appeals in 2015 complaining about inadequate safety at SCI Huntingdon. Eckard and Eberling personally reviewed these grievances and appeals. Also, at least two inmates filed federal lawsuits in the first half of 2015 seeking injunctive relief to improve security conditions at SCI Huntingdon.

34. By June 2015 Defendants Eckard and Eberling had failed to take reasonable measures to abate the substantial risk of prison officials-on-inmate violence at SCI Huntingdon. As a result of their deliberate indifference, Plaintiff Allen was subjected to a physical assault on June 30, 2015.

35. PRIOR TO THIS EVENT, PLAINTIFF ALLEN HAD FILED SEVERAL GRIEVANCES AGAINST DEFENDANT GOUGHNOUR FOR TAMPERING WITH HIS FOOD TRAYS, AMONG OTHER THINGS. AND YET DEFENDANT ECKARD HAD KEPT LOOKING THE OTHER WAY UNTIL IT WAS TOO LATE.

36. THE ACTIONS OF THE DEFENDANTS WERE DELIBERATE AND INTENTIONAL AND WERE DONE WITH MALICE TOWARD PLAINTIFF ALLEN. SAID ACTIONS WERE DONE WITH RECKLESS DISREGARD FOR THE RIGHTS OF PLAINTIFF ALLEN AND WITH WILLFUL DISREGARD TOWARDS HIS RIGHTS.

## V. EXHAUSTION OF LEGAL REMEDIES

37. PLAINTIFF ALLEN HAS EXHAUSTED ALL AVAILABLE ADMINISTRATIVE REMEDIES REGARDING THE MATTERS DESCRIBED IN THIS COMPLAINT. ON JULY 6, 2015, HE FILED A GRIEVANCE ASKING FOR MONEY DAMAGES. THIS GRIEVANCE WAS REJECTED ON JULY 6, 2015. ON JULY 23, 2015, PLAINTIFF FILED AN APPEAL TO DEFENDANT ECKARD, WHO UPHELD REJECTION ON AUGUST 10, 2015. ON AUGUST 19, 2015, PLAINTIFF FILED AN APPEAL TO SECRETARY'S OFFICE OF INMATE GRIEVANCES & APPEAL, AND IT WAS EXPLAINED: MR. ALLEN, THIS IS BEING INVESTIGATED THROUGH DC ADM 001. YOU WILL BE NOTIFIED UPON THE COMPLETION OF THE INVESTIGATION. 10/6/15.

## VI. LEGAL CLAIMS

38. PLAINTIFF REALLEGE AND INCORPORATE BY REFERENCE PARAGRAPHS 1-38.

39. DEFENDANTS SPARR AND GOUGHNOUR USED EXCESSIVE FORCE AGAINST PLAINTIFF ALLEN BY SLAMMING HIM FACE FIRST ONTO THE CONCRETE FLOOR WHEN ALLEN WAS NOT VIOLATING ANY PRISON RULE, AND WAS NOT ACTING DISRUPTIVELY. DEFENDANTS SPARR AND GOUGHNOUR'S ACTIONS VIOLATED PLAINTIFF ALLEN'S RIGHTS UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND CAUSED PLAINTIFF ALLEN PAIN, SUFFERING, PHYSICAL INJURY AND EMOTIONAL DISTRESS.

40. THE DELIBERATE INDIFFERENCE OF DEFENDANTS ECKARD AND EBERLING TO THE SUBSTANTIAL RISK OF SERIOUS PRISON OFFICIALS-ON-INMATE ASSAULT AT THE STATE CORRECTIONAL INSTITUTIONS AT HUNTINGDON HAS DEPRIVE PLAINTIFF OF HIS RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

41. Defendant A. Himes, Hearing Examiner conspired to cover up Defendants Sparr and Goodnhour use of excessive force by falsely claiming that Plaintiff Allen was combative, and depriving Plaintiff of his rights under the Due Process Clause of the Fourteenth Amendment to present evidence and witnesses.

42. The deliberate indifference of Defendants Nurse Jane Doe and McConnell to Plaintiff's serious medical needs on June 30 and July 1, 2016 deprived him of his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment:

1. Granting Plaintiff Allen a declaration that the acts and omissions described herein violate his rights under the Constitution and laws of the United States.

2. A preliminary and permanent injunction ordering the PA. D.O.C. to protect Plaintiff Allen from dangerous prison guards; properly train SHU Lieutenants to supervise inmate living areas and discipline prison officials misbehaviors.

3. Granting Plaintiff Allen compensatory damages in the amount of $60,000 against each Defendant, jointly and severally.

4. Plaintiff seeks punitive damages in the amount of $60,000. Plaintiff seek these damages jointly and severally against each Defendant.

5. Plaintiff seeks attorney fees.

6. Plaintiff also seek a jury trial on all issues triable by jury.

7. Plaintiff also seek recovery of his cost in this suit, and

8. Any additional relief this Court deems just, proper, and equitable.

DATED: June 5, 2017

7

RESPECTFULLY SUBMITTED,

ANTHONY C. ALLEN. # BQ6634
SCI FOREST
PO BOX 945
MARIENVILLE, PA 16239

    I HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS ALLEGED THEREIN ARE TRUE, EXCEPT AS TO MATTERS ALLEGED ON INFORMATION AND BELIEF, AND, AS TO THOSE, I BELIEVE THEM TO BE TRUE. PURSUANT TO 28 U.S.C. § 1746, I DECLARE AND VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON JUNE 5, 2017.

*Anthony C. Allen*
ANTHONY C. ALLEN

8

PRIORITY MAIL★

USPS TRACKING™ INCLUDED*
INSURANCE INCLUDED*
PICKUP AVAILABLE
* Domestic only

USED INTERNATIONALLY,
CUSTOMS DECLARATION
MAY BE REQUIRED.

Expected Delivery Day: 06/08/2017

USPS TRACKING NUMBER

1004
18501
R2305M144596-02
AMOUNT
$0.00

To: Anthony C Allen BQ6634
SCI Forest
P.O. Box 945
Marienville, PA 16239

RECEIVED TO: Middle Dist of PA,
SCR          William D. Nealon - Fed. Bldg,
JUN 0 8 2017  U.S. Courthouse
PER _____   235 N. Washington Ave
DEPUTY CLERK  P.O. Box 1148
              Scranton, PA 18501

packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.