# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY ALLEN,           :
        Plaintiff       :
                       :        **No. 1:17-cv-996**
        v.               :
                       :        **(Judge Rambo)**
J.A. ECKARD, *et al.*,     :
      Defendants     :

## MEMORANDUM

## I.      BACKGROUND

*Pro se* Plaintiff Anthony Allen ("Allen"), who is currently incarcerated at the State Correctional Institution Pine Grove in Indiana, Pennsylvania ("SCI Pine Grove"), initiated this civil action by filing a complaint pursuant to 42 U.S.C. § 1983 on June 8, 2017 against Defendants J.A. Eckard ("Eckard"), A. Eberling ("Eberling"), K.M. Sparr ("Sparr"), R.W. Goughnour ("Goughnour"), A. Himes ("Himes"), C. McConnell ("McConnell"), and Nurse Jane Doe.  (Doc. No. 1.)  Allen alleges that while he was incarcerated at SCI Huntingdon: (1) Defendants Sparr and Goughnour violated his Eighth Amendment rights by using excessive force against him, (2) Defendants Eckard and Eberling violated his Eighth Amendment rights by failing to protect him from the use of force and by failing to train and supervise the Restricted Housing Unit ("RHU") officers regarding the use of force; (3) Defendant Himes violated his due process rights under the Fourteenth Amendment by sanctioning him to ninety (90) days in

disciplinary confinement; (4) Defendant Himes conspired to "cover up" the use of excessive force by Defendants Sparr and Goughnour; and (6) Defendants McConnell and Jane Doe violated his Eighth Amendment rights by demonstrating deliberate indifference to his medical needs. (*Id.*) By Order entered on July 19, 2017, the Court granted Allen leave to proceed *in forma pauperis* and directed service of his complaint upon the Defendants. (Doc. No. 8.)

On October 16, 2017, Defendants Eckard, Eberling, Goughnour, Himes, and Sparr filed a motion for judgment on the pleadings. (Doc. Nos. 20, 21.) Allen filed a brief in opposition (Doc. No. 24), and a motion for leave to file a supplemental complaint, seeking to substitute C. Swanger for Nurse Jane Doe (Doc. No. 25). By Order entered on January 5, 2018, the Court granted Allen's motion and directed the Clerk of Court to serve his complaint upon Defendant Swanger. (Doc. No. 27.) The Court also directed Allen to, within ten (10) days, provide a current address for Defendant McConnell or show good cause as to why his claims against Defendant McConnell should not be dismissed without prejudice for failure to effect service upon him. (*Id.*)

Allen responded with a motion for leave to file a supplemental complaint or, in the alternative, to show cause why the complaint should not be dismissed without prejudice as to Defendant McConnell. (Doc. No. 29.) By Order entered on February

13, 2018, the Court granted Allen's motion insofar as the Clerk of Court was directed to serve the complaint upon Defendant McConnell at the address provided by Allen. (Doc. No. 31.) A summons was issued and mailed, by certified mail, to Defendant McConnell that same day. (Doc. No. 32.) On February 21, 2018, the Court received the signed certified mail receipt, indicating that an unknown individual signed for the summons and copy of the complaint mailed to Defendant McConnell. (Doc. No. 33.)

By Memorandum and Order entered on May 8, 2018, the Court granted in part and denied in part the motion for judgment on the pleadings filed by Defendants Eckard, Eberling, Goughnour, Himes, and Sparr. (Doc. Nos. 39, 40.) Specifically, the Court granted the motion as to Allen's failure to protect claim against Defendants Eckard and Eberling and his due process and conspiracy claims against Defendant Himes and dismissed Defendant Himes from the action. (*Id.*) The Court denied the motion as to Allen's excessive force and failure to train and supervise claims. (*Id.*)

After discovery concluded, Defendants Eberling, Eckard, Goughnour, and Sparr filed a motion for summary judgment and supporting materials. (Doc. Nos. 53, 54, 55.) By Order entered on April 8, 2019, the Court, noting that Defendant Swanger had failed to file a waiver of service, directed that a summons be issued and that the United States Marshals Service serve her with Allen's complaint. (Doc. No. 57.) On April 11, 2019, observing that Defendants Eberling, Eckard, Goughnour, and Sparr raised

the issue of whether Allen exhausted his administrative remedies with respect to some of his claims in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a *Paladino* Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[1]  (Doc. No. 58.)  The Court provided Defendants fourteen (14) days to "amend or supplement their materials to further address the issue of whether Plaintiff has exhausted his administrative remedies."  (*Id.*) The Court further noted that Allen should file a brief in opposition addressing the issue of administrative exhaustion, as well as a statement of material facts specifically responding to Defendants' statement, within twenty-one (21) days from the date that Defendants filed any amended or supplemental materials.  (*Id.*)

On April 11, 2019, counsel filed a notice of appearance, waiver of service, and answer on behalf of Defendant Swanger.  (Doc. Nos. 59, 60, 61.)  The next day, the Court received Allen's motion for an extension of time to file a brief in opposition to the pending motion for summary judgment.  (Doc. No. 62.)  By Order entered on April 22, 2019, the Court granted Allen's motion for an extension, noting that Allen could file his brief in opposition within twenty-one (21) days of either April 25, 2019 or the

---

[1] *See Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018).

date that Defendants filed their amended and supplemental materials in response to the Court's April 11, 2019 Order, whichever occurred first. (Doc. No. 64.)

Defendants Eberling, Eckard, Goughnour, Sparr, and Swanger (collectively, "Defendants") filed an amended motion for summary judgment and supporting materials on April 25, 2019. (Doc. Nos. 65, 66, 67.) Therefore, by Order entered on May 15, 2019, the Court denied as moot the previously-filed motion for summary judgment. (Doc. No. 68.) After receiving an extension of time (Doc. Nos. 71, 72), Allen filed his brief in opposition and supporting materials on July 12, 2019 (Doc. Nos. 74-77). Defendants filed their reply brief on July 26, 2019. (Doc. No. 78.) Accordingly, the amended motion for summary judgment is ripe for disposition.

In another Order entered on May 15, 2019, the Court noted that the proof of service attached to the summons issued to Defendant McConnell had never been returned to the Court. (Doc. No. 69.) The Court further noted that while the docket reflected that counsel for the other Defendants was counsel for Defendant McConnell, it appeared that this was an error, "as counsel previously noted that she was unable to accept service on his behalf because he was not a DOC employee and she never entered a notice of appearance on his behalf." (*Id.*) Because the Court could not discern whether Defendant McConnell actually received the summons, the Court directed that a summons be issued and that the United States Marshals Service serve Defendant

McConnell with the complaint. (*Id.*) The Court advised Allen that if Defendant McConnell could not be served, his claims against him may be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for failure to effect service. (*Id.*) On August 2, 2019, following an inquiry, the Clerk of Court learned that the United States Marshal had attempted to execute the summons, but that Defendant McConnell "was not known" at the address provided by Allen.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL

2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

**B.     Statement of Material Facts**[2]

During his incarceration at SCI Huntingdon, Allen was housed in the RHU. (Doc. No. 67 ¶ 1.)   On June 30, 2015, Defendants Sparr and Goughnour were escorting Allen to his cell from the law library.   (*Id.* ¶ 2.)   Prior to leaving the law library, Defendant Goughnour pulled Allen's jumpsuit out of his socks.[3]   (*Id.* ¶ 3.)

---

[2] As noted *supra*, this Court's Local Rules provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  *Id.*  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  *See id.*

Here, Allen filed a response to Defendants' statement of material facts in compliance with Local Rule 56.1.  (Doc. No. 75.)  Allen's statement of additional disputed material facts (Doc. No. 76), however, does not comply with Local Rule 56.1, as it does not respond specifically to the numbered paragraphs in Defendants' statement of material facts.  Moreover, while Allen's verified complaint may be treated as an affidavit in opposition to the motion for summary judgment, *see Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003), the allegations must be based on personal knowledge, and this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."  *See Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)).  Accordingly, the Court sets forth the undisputed facts above with footnotes setting forth the parties' relevant factual disputes.

[3] Defendants assert that Defendant Goughnour pulled Allen's jumpsuit out of his socks "[d]uring the required pat down prior to leaving the law library."  (Doc. No. 67 ¶ 3.)  Allen maintains that Defendant Goughnour did not conduct a pat down and that "nowhere in the Restricted Housing Unit ("RHU") inmate handbook does it state trouser (jumpsuit) cuffs may not be work inside of socks."  (Doc. No. 75 ¶ 3.)

Subsequently, an unplanned use of force occurred.  (*Id.* ¶ 4.)  Defendants Sparr and Goughnour, along with Allen, arrived at Allen's cell at 4:02 p.m.  (*Id.* ¶ 5.)  Allen began to "tug[] and pull[]" Defendant Sparr into his cell.[4]  (*Id.* ¶ 6.)  To gain control of Allen, Defendants Sparr and Goughnour pulled him out of the cell and placed him on the floor while other officers arrived with leg restraints.[5]  (*Id.* ¶ 7.)  Allen was then placed inside a secure search area.[6]  (*Id.* ¶ 8.)  No other force was used against Allen.  (*Id.* ¶ 9.)  Allen was subsequently found guilty of misconduct charges of assault, threatening an employee, using abusive language, and refusing to obey an order.  (*Id.* ¶¶ 10-11.)

---

[4] Allen maintains that once he was in his cell, Defendant Sparr "pulled him back out by the tether" that was attached to the handcuffs.  (Doc. No. 1 ¶ 15.)  He also "disagrees that the recording shows Defendant Sparr being tugged or pulled into [his] cell."  (Doc. No. 75 ¶ 6.)

[5] Allen asserts that Defendants Sparr and Goughnour "picked [him] up and slammed [him] face first down onto the concrete floor and then Defendant Goughnour jumped on [his] back."  (Doc. No. 1 ¶ 15; *see also* Doc. No. 75 ¶ 7.)  According to Allen, the "assault lasted for approximately 5 minutes."  (Doc. No. 1 ¶ 15.)

[6] Defendants admit that "[i]nitial hand held video of the incident malfunctioned and only began to record at 4:04:47 pm, when [Allen] was already placed inside the secure search area."  (Doc. No. 67 ¶ 8.)

Allen maintains that while he was in the secure search area, Defendant Swanger came to take pictures of his injuries, but did not provide any medical care.  (Doc. No. 1 ¶ 18.)  He claims that he was "clearly injured" because "the left side of his face was bruised and swollen."  (*Id.* at ¶ 19.)  Allen was dizzy and had "severe pain in his head and throughout his body."  (*Id.*)  He faults Defendant Swanger for not arranging for him to be transported to the nearest emergency room and for not giving him two (2) tablets of Tylenol.  (*Id.* ¶ 20.)  Allen alleges that because of Defendant Swanger's deliberate indifference, he ultimately suffered "prolonged and extreme pain," such as chest pain and an upper respiratory infection.  (*Id.* ¶¶ 23-24.)

On July 6, 2015, Allen filed grievance 574224 "concerning the use of force incident that occurred between him and Defendants Sparr and Goughnour." (*Id.* ¶ 12.) He did not file a grievance against Defendants Eckard or Eberling "related to a failure to train or supervise RHU officers."[7] (*Id.* ¶ 13.) Moreover, Allen did not file a grievance against Defendant Swanger "related to the medical care received after the use of force incident."[8] (*Id.* ¶ 14.)

## C. Excessive Force Claim Against Defendants Sparr and Goughnour

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted) ("To violate the Cruel and Unusual Punishment Clause, a prison official must have a sufficiently culpable state

---

[7] Allen asserts that he has filed "several grievances against both Defendants Eckard and Eberling alleging among other things deliberate indifference, better supervision, supervisory officials['] blind eyes to abuse, etc." (Doc. No. 75 ¶ 13.)

[8] Allen maintains that he "did file a grievance involving this mater which was investigated by security," and that Defendant Swanger "was aware of job duties." (Doc. No. 75 ¶ 14.) In his brief in opposition, however, Allen concedes that he never filed a grievance concerning Defendant Swanger's actions and asks to "voluntarily dismiss her from this civil matter." (Doc. No. 74 at 10.)

of mind. . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."). An Eighth Amendment claim includes both objective and subjective components. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. *See id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *See id.*

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." *Brooks v. Kyler*, 204 F.3d 102, 105 (3d Cir. 2000). The standard governing the Court's inquiry as to whether a plaintiff has a viable excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

The issue of whether excessive force was used is one that, in proper circumstances, can be determined as a matter of law. In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the

infliction of pain." *Brooks*, 204 F.3d at 106 (quoting *Whitley*, 475 U.S. at 322). In

making this determination, courts are tasked with evaluating the following *Whitley*

factors:

> (1) the need for the application of force; (2) the relationship between
> the need and the amount of force that was used; (3) the extent of injury
> inflicted; (4) the extent of the threat to the safety of staff and inmates,
> as reasonably perceived by the responsible officials on the basis of the
> facts known to them; and (5) any efforts made to temper the severity of
> a forceful response.

*Id.* The United States Supreme Court has stated:

> [W]hen prison officials maliciously and sadistically use force to cause
> harm, contemporary standards of decency are always
> violated . . . whether or not significant injury is evident. Otherwise, the
> Eighth Amendment would permit any physical punishment, no matter
> how diabolic or inhuman, inflicting less than some arbitrary quantity of
> injury.

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S.

1 (1992)).

When a court considers such claims, the reasonableness of a particular use of

force often depends upon the relevant factual context and must be "judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight." *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *see also Fuentes

v. Wagner*, 206 F.3d 335, 346 (3d Cir. 2000) ("[E]ven if we concede [that an inmate]

has established at most that prison officials over-reacted to the disturbance that he

13

caused . . . any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'").  Additionally, *de minimis* use of physical force does not qualify as excessive force unless the force is "repugnant to the conscience of mankind."  *See Brooks*, 204 F.3d at 107 (citing *Hudson*, 503 U.S. at 6); *see also Wilkins*, 559 U.S. 34 (2010) (clarifying that *de minimis* force, rather than *de minimis* injury, is the dispositive issue).  Not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9.

Defendants argue that they are entitled to summary judgment on Allen's excessive force claim because "video evidence does not show a sadistic or malicious use of force."  (Doc. No. 66 at 10.)  In support of their motion, they have submitted documentation pertaining to the use of force incident as well as video evidence from surveillance and handheld cameras.  (*Id.*, Exs. A-C.)  In response, Allen avers that Defendants Sparr and Goughnour pulled him out of his cell, "lifted [him] in the air and slammed him face first onto the concrete floor."  (Doc. No. 75 ¶ 7; *see* Doc. No. 1 ¶ 15.)  He also maintains that Defendant Goughnour "jumped on [his] back" and that he was "severely injured" from the use of force.  (Doc. No. 1 ¶ 15, 17.)

At the summary judgment stage, the Court must generally:

take the facts in the light most favorable to the non-moving party when disposing of a summary judgment motion.  However, a "limited

exception" to this general rule exists where the nonmovant's version of the events may be disregarded to the extent those facts are "blatantly contradicted" by the summary judgment record.

*Millbrook v. United States*, No. 3:15-CV-0832, 2016 WL 4734658, at *9 (M.D. Pa. Sept. 12, 2016); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (noting that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). This Court has noted that "[w]hile video footage has been found to establish this 'limited exception,' not all video footage or mechanical depictions will allow a court to disregard the non-movant's version of the events." *See Millbrook*, 2016 WL 4734658, at *9. For example, "courts have declined to apply the limited exception set forth in *Scott v. Harris* where a videotape or other mechanical depiction does not capture the whole incident . . . or where the videotape or mechanical depiction is susceptible to multiple reasonable interpretations." *See Patterson v. City of Wildwood*, 354 F. App'x 695, 698 (3d Cir. 2009); *see also Mills v. City of Harrisburg*, 589 F. Supp. 2d 544, 552 n.5 (M.D. Pa. 2008) (concluding that audio recording did not qualify for the *Scott* limited exception because it was susceptible to multiple reasonable interpretations), *aff'd*, 350 F. App'x 770 (3d Cir. 2009).

The Court has reviewed the video provided by Defendants in support of their motion. Video footage from the surveillance cameras depicts Defendants Sparr and Goughnour escorting Allen back to his cell. Allen enters his cell, and one of the officers stands at the entrance to the open cell, holding the tether. The other officer stands next to the cell, waiting to close the cell door. While Allen cannot be seen, the video shows the arm and upper body of the officer holding the tether being pulled into Allen's cell. Defendants Sparr and Goughnour then pull Allen out of the cell and place him on the ground. Shortly thereafter, other officers arrive with leg restraints. After viewing the video, the Court concludes that there is nothing "that could even be remotely characterized as in any way malicious or sadistic, the essential prerequisite to an Eighth Amendment violation." *See McMillian v. Walsh*, No. 1:11-CV-2223, 2014 WL 310386, at *11 (M.D. Pa. Jan. 28, 2014). The Court simply cannot say that any "reasonable finder of fact could view the video of the incident and determine that [Defendants] acted maliciously and sadistically." *See Tindell v. Beard*, 351 F. App'x 591, 596 (3d Cir. 2009).

The video of the June 30, 2015 incident contradicts Plaintiff's account and, therefore, renders summary judgment in favor of Defendants Sparr and Goughnour proper. The video does not show Defendant Sparr pulling Allen back out of the cell by the tether, as Allen claims. The video also does not show Defendants Sparr and

Goughnour picking him up and "slamm[ing]" him to the ground, as Allen also claims. Moreover, the video does not depict Defendant Goughnour "jump[ing]" on Allen's back. Therefore, because the video evidence does not support Allen's allegations regarding the events of June 30, 2015, and, as a result, "no reasonable jury could believe [them]," the Court will not adopt Allen's version of the facts for purposes of summary judgment. *See Scott*, 550 U.S. at 380. In sum, Defendants have satisfied their burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact as to Plaintiff's claims of excessive force regarding the incident that occurred on June 30, 2015. Accordingly, the Court will grant Defendants' motion as to Allen's excessive force claim.

### D. Allen's Claims Against Defendants Eckard, Eberling, and Swanger

Under the PLRA, a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted. 42 U.S.C. § 1997(e). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. *Id.* Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008); *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this

exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *Warman*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir.

2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. *Id.* at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a

failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269.

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" *Foster v. Morris*, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Id.* (quoting *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

In support of their motion for summary judgment, Defendants have submitted a declaration from Connie Green, the Superintendent's Assistant at SCI Huntingdon (Doc. No. 66-4 ("Green Decl.") at 2-5); a copy of the Pennsylvania Department of Corrections' ("DOC") policy DC-ADM 804, which sets forth the grievance system

procedures (*id.* at 7-41); and a transcript of Allen's deposition (Doc. No. 66-3 at 2-41). The DOC maintains a computerized system, known as the Automated Inmate Grievance Tracking System, to store and retrieve data regarding the grievance system. (Green Decl ¶ 4.) An inmate wishing to submit a grievance submits it to the Facility Grievance Coordinator, who assigns a tracking number and enters the grievance into the Automated Inmate Grievance Tracking System. (*Id.* ¶ 5.) Of note, if the grievance states a staff member's name, the Facility Grievance Coordinator is able to include that individual's name in the Automated Inmate Grievance Tracking System. (*Id.* ¶ 8.)

Once an initial response to the grievance is prepared, the date of the response and a summary are entered into the Automated Inmate Grievance Tracking System. (*Id.* ¶ 9.) If the inmate appeals, the date the appeal was received is also entered into the system. (*Id.* ¶ 10.) When the appeal is addressed by the Facility Manager, the date of the response and a summary are entered into the Automated Inmate Grievance Tracking System. (*Id.* ¶ 11.) The inmate may then appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (*Id.* ¶ 12.) SOIGA's response is also entered into the system. (*Id.*)

Green searched the Automated Inmate Grievance Tracking System and determined that Allen had filed ninety (90) grievances prior to 2016. (*Id.* ¶ 15.)

After cross-referencing staff names, however, she did not locate a grievance filed by Allen concerning either Defendant Eberling or Defendant Eckard. (*Id.*) Moreover, she did not locate any grievance filed by Allen about Defendant Swanger. (*Id.* ¶ 16.) During his deposition, Allen confirmed that he never filed a grievance against Defendants Eberling and Eckard "related to this event or the training of employees or anything like that." (Doc. No. 66-3 at 26.)

In his brief in opposition, Allen concedes that he did not file a grievance against Defendant Swanger. (Doc. No. 74 at 10.) He therefore requests to voluntarily dismiss her as a defendant to this action. (*Id.*) Defendants "agree with this concession as they were unable to locate a grievance filed against Defendant Swanger." (Doc. No. 78 at 10.) In light of this, the Court will grant Allen's request and dismiss Defendant Swanger as a defendant to this action.

With respect to his claims against Defendants Eberling and Eckard, Allen contends that he "has filed several grievances against both Defendants Eckard and Eberling alleging among other things deliberate indifference, better supervision, supervisory officials blind eyes to abuse, etc." (Doc. No. 75 ¶ 13.) However, upon review of the grievances that Allen has provided to support his claim (*see* Doc. No. 77-3), the Court concludes that none of them set forth an allegation that Defendants Eberling and Eckard failed to train and supervise RHU officers regarding the use of

force.  Allen also maintains that "a number of inmates filed grievances and lawsuits about the substantial risk of harm in the RHU at SCI Huntingdon but Defendants Eckard and Eberling turn a blind eye."  (Doc. No. 74 at 10.)  However, the fact that other inmates filed such grievances "does not excuse [Allen] from filing his own grievance.  To allow [Allen] to circumvent the PLRA's exhaustion requirement because other inmates filed similar grievances would be contrary to Congress's intent in enacting the [PLRA]."  *Laureano v. Pataki*, No. 99Civ.10667 (LAP), 2000 WL 1458807, at *2 (S.D.N.Y. Sept. 29, 2000); *see also Martin v. Gold*, No. 1:05-CV-28, 2005 WL 1862116, at *7 (D. Vt. Aug. 4, 2005) (citing *Laureano* for same proposition); *cf. Boyer v. Taylor*, No. 06-694-GMS, 2013 WL 1332443, at *4 n.6 (D. Del. Mar. 30, 2013) (noting that "vicarious exhaustion" has not been recognized "except in some circuits when it has been permitted in § 1983 class actions filed by inmates").

Consequently, because the undisputed record reflects that Allen did not exhaust his administrative remedies regarding his claim that Defendants Eberling and Eckard failed to train and supervise RHU officers regarding the use of force, and because Allen has not "come forth with 'affirmative evidence, beyond the allegations of the pleadings,'" that refutes the defense that he has failed to properly exhaust this claim, *see U.S. Bank, Nat. Ass'n v. Greenfield*, Civ. No. 12-2125, 2014

24

WL 3908127, at *2 (M.D. Pa. Aug. 11, 2014) (quoting *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)), summary judgment will be entered in favor of Defendants Eberling and Eckard as to Allen's failure to train and failure to supervise claims.[9]

## III.  FAILURE TO SERVE DEFENDANT MCCONNELL

On January 5, 2018, the Court directed Allen to show cause why his claims against Defendant McConnell should not be dismissed without prejudice for failure to effect service pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. No. 27.)  In response, Allen provided the address of the Corizon regional office in Philadelphia for use in serving Defendant McConnell.  (Doc. No. 29.)  The Court has twice issued a summons and directed that Defendant McConnell be served at that address.  (Doc. Nos. 31, 69.)  However, the United States Marshals Service has been unable to effect service because Defendant McConnell is not known at that location.

Rule 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service

---

[9] Defendants argue, alternatively, that they are entitled to summary judgment because Allen cannot establish failure to train and failure to supervise claims against Defendants Eberling and Eckard. Because the Court has concluded that Allen did not exhaust his administrative remedies with respect to these claims, the Court does not address this argument.

be made within a specified time." Fed. R. Civ. P. 4(m). The Court has on several occasions warned Allen that Defendant McConnell is subject to dismissal if he cannot be served with the complaint. This action has been pending before the Court for more than two (2) years, and service has not been made on Defendant McConnell. Accordingly, the Court will dismiss Defendant McConnell from this action pursuant to Rule 4(m).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Allen's request to voluntarily dismiss Defendant Swanger as a defendant to this action. The amended motion for summary judgment (Doc. No. 65) will be granted with respect to Allen's remaining claims against Defendants Eberling, Eckard, Goughnour, and Sparr. In light of the dismissal of Defendant Swanger as a defendant, the Court will deny as moot the amended motion for summary judgment (Doc. No. 65) with respect to Allen's claims against her. Defendant McConnell will be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. An appropriate Order follows.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: August 14, 2019